IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DWAYNE ALMOND, #238829-A,

            Plaintiff,

    v.

WILLIAM POLLARD, PETE ERICKSEN,
LT. SWIEKATOWSKI, RICHARD HEIDORN
and JEANANNA ZWIERS,

            Defendants.

OPINION and ORDER

09-cv-335-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Dwayne Almond, a prisoner at the Green Bay Correctional Institution, is proceeding in forma pauperis on the following Eighth Amendment imminent danger claims: (1) defendants Richard Heidorn and Jeananna Zwiers are denying him treatment for his back and groin ailments; (2) defendants Lt. Swiekatowski and Pete Ericksen took away his clothing, mattress and shoes; and (3) defendant William Pollard allowed staff members to take away plaintiff's clothes, mattress and shoes, failed to help him or order staff members to take him to the hospital and threatened him. In a February 24, 2010 order, I gave plaintiff a final chance to submit materials in support of his motion for preliminary injunctive relief that comply with the court's procedures for such motions. Plaintiff has

1

Copy of this document has been provided to: Plaintiff
this 17 day of May, 2010
by [signature]
S. Vogel, Secretary to
Judge Barbara B. Crabb

submitted these materials as well as his third motion for appointment of counsel, a motion asking the court to order the attorney general to transport him to a hospital, a motion asking the court to rule on these submissions and a motion to stop interference with his legal mailings. Defendants have filed a motion to strike plaintiff's materials in support of his preliminary injunction motion, a motion to revoke plaintiff's in forma pauperis status, a motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies and a motion to transfer the case to the Eastern District of Wisconsin.

I will deny defendants' motion to transfer the case and partially grant their motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies. The only claims that survive summary judgment are plaintiff's claims that defendants Heidorn, Zwiers and Pollard are denying him treatment for his back ailments. I will deny the remainder of the motions, including plaintiff's motions for preliminary injunctive relief.

## OPINION

### A. Motion to Transfer

The first motion I must address is defendants' motion to transfer venue to the Eastern District of Wisconsin under 28 U.S.C. § 1404(a) on the ground that transfer to that district is clearly more convenient for the parties and witnesses. For the purpose of deciding this motion, I draw the following facts from the complaint. (Neither party submitted evidentiary materials regarding this motion; defendants state that the allegations in the complaint are sufficient to support a change of venue).

1. Record facts

Plaintiff Dwayne Almond is a prisoner at the Green Bay Correctional Institution. He suffers from back injuries and a groin infection, leaving him in constant pain. He has submitted health service requests regarding these ailments but defendants Doctor Richard Heidorn and Jeananna Zwiers are denying him treatment. Defendants William Swiekatowski, a lieutenant, and Pete Ericksen, the security director, are aware of plaintiff's back injuries but chose to take away plaintiff's clothing, mattress and shoes. Defendant Warden William Pollard is aware of plaintiff's conditions but has allowed staff members to take away plaintiff's clothes, mattress and shoes, and has failed to help him or order staff members to take him to the hospital. Also, Pollard has threatened plaintiff by telling him if he keeps "challenging" prison staff, Pollard "doesn't care what happen[s]" to plaintiff. Two of plaintiff's fellow inmates at the Green Bay Correctional Institution, Kenneth Morris and Patrick Peterson, are potential witnesses for plaintiff.

2. Discussion

Under 28 U.S.C. § 1404(a), a court may transfer a case to another district where the action may have been brought if transfer serves the convenience of the parties and witnesses and will promote the interests of justice. 28 U.S.C.§ 1404(a); <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 219-20 (7th Cir. 1986). The parties do not dispute that venue is proper in both the Western District of Wisconsin and the Eastern District of Wisconsin. Therefore, I need only determine whether transfer would serve the convenience of the parties

3

and witnesses and promote the interests of justice. The convenience inquiry requires the court to consider the situs of material events, ease of access to sources of proof, including the location of the parties and the witnesses, and plaintiff's choice of forum. Harley-Davidson, Inc. v. Columbia Tristar Homes Video, Inc., 851 F. Supp. 1265, 1269 (E.D. Wis. 1994); Kinney v. Anchorlock Corp., 736 F. Supp. 818, 829 (N.D. Ill. 1990). The "interest of justice" analysis focuses on whether transfer would promote the "efficient administration of the court system," including whether transfer would insure or hinder a speedy trial. Coffey, 796 F.2d at 221. The movants, defendants in this instance, bear the burden of establishing that the transferee forum is clearly more convenient. Id. at 219.

a. Convenience

The plaintiff's choice of forum is usually given substantial weight, particularly if it is also the plaintiff's home forum. Amorose v. C.H. Robinson Worldwide, Inc., 521 F.Supp.2d 731, 735 (N.D. Ill. 2007). However, plaintiff is incarcerated in the Eastern District of Wisconsin. Moreover, the plaintiff's choice of forum is given less deference "when another forum has a stronger relationship to the dispute." Id., citing Chicago, Rock Island & Pac. R.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955). This case would seem to have no connection to the Western District of Wisconsin, as plaintiff and defendants all appear to reside in the Eastern District (although defendants do not provide affidavits confirming that fact). Further, all of plaintiff's allegations concern events that occurred in the Eastern District. Therefore, although plaintiff's choice of venue weighs against transfer, the situs of

4

material events favors transfer.

As for the ease of access to sources of proof, including the location of the parties and the witnesses, each of these factors favors transfer. All of the parties and the sources of proof appear to be located in the Eastern District. In addition, plaintiff alleges that inmates Morris and Peterson witnessed some of the alleged events. These potential witnesses are incarcerated in the Eastern District. Considering all these factors, the Eastern District of Wisconsin seems to be more convenient for the parties.

b. Interests of justice

The "interests of justice" analysis focuses on whether transfer would promote the "efficient administration of the court system," including whether transfer would insure or hinder a speedy trial. Coffey, 796 F.2d at 221. The interests of justice may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. Id. at 220.

Defendants' only argument in favor of transfer bearing on the interests of justice is that two months before plaintiff filed his original complaint in this case, Judge William C. Griesbach of the Eastern District of Wisconsin granted summary judgment against plaintiff on a similar case (Eastern District case no. 08-C-546) brought by plaintiff. From this, defendants state that plaintiff "engaged in forum shopping as he acquired three 'strikes' per 28 USC § 1915." They argue that "[t]he interests of justice require the case be litigated in the Eastern District in order to prevent inmates, particularly one who acquired three

5

'strikes,' to circumvent the appropriate venue in order to 'shop' for a more favorable venue." It is unclear exactly what defendants are getting at. However, a PACER search reveals that this district appears to be plaintiff's default district for filing. Plaintiff has filed far more cases in the Western District (14) than in the Eastern District (4), and received three strikes in this district. Almond v. State of Wisconsin, 06-C-447-C, decided August 23, 2006; Almond v. State of Wisconsin, 06-C-448-C, decided August 23, 2006; and Almond v. State of Wisconsin, 06-C-449-C, decided August 24, 2006.

As for the efficient administration of the court system, neither party has submitted any evidence indicating the state of the docket in the Eastern District and how that might affect the chances of a speedy trial there. However, it seems obvious that transferring the case would result in delays, as the new judge would have to become familiar with the several pending motions that are before this court. As could be expected by plaintiff's numerous filings in this district, the court is familiar with plaintiff and is capable of efficiently handling this case. In particular, I am prepared to address all of the pending motions immediately. Thus, I conclude that litigation efficiency would be hindered by transfer and that the interests of justice outweigh the convenience of the parties and witnesses. Therefore, I will deny defendants' motion to transfer the case to the Eastern District of Wisconsin.

B. Motion for Summary Judgment on Failure to Exhaust Administrative Remedies

Next, I must consider defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83-85

(2006) (holding that once defendants raise failure to exhaust as defense, district courts lack discretion to decide claims on merits unless exhaustion requirements have been satisfied) Under 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit in federal court. To comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison administrative rules require." Pozo, 286 F.3d at 1025. The purpose of these requirements is to give prison administrators a fair opportunity to resolve the grievance without litigation. Woodford, 548 U.S. at 88-89.

I note first that defendants' briefing of the exhaustion issue is not particularly helpful. They detail six grievances filed by plaintiff and admit that plaintiff has exhausted four of the six. They state that "[o]nly the allegations in [the four exhausted] complaints, as they relate to the causes of action permitted in the screening order, are actionable," but then provide almost no discussion of which of these grievances pertain to each of plaintiff's current claims. They do they say whether they seek full or partial summary judgment, although it would have been helpful had they done so, given that some of plaintiff's grievances have been exhausted. (I note further that plaintiff has filed materials in surreply, but the court has not granted him permission to do so, and in any case, they do not provide any new information. Therefore, I will disregard this filing.)

An independent review of the administrative materials provided by defendants shows that only three of plaintiff's grievances are relevant to his claims in this case. In inmate complaint nos. GBCI-2008-13304 and GBCI-2008-14137, plaintiff alleged that he injured his neck and lower back, and that prison staff denied him adequate treatment. Thus, I conclude that plaintiff has exhausted his claim that defendants Heidorn and Zwiers are denying him treatment for his back ailments. In addition, because plaintiff's complaint can be read to allege that defendant Pollard took an active role in denying him medical treatment, I conclude that he has exhausted his claim against Pollard as it pertains to his back injuries. However, in neither of these grievances does plaintiff refer to his groin infection, so I conclude that plaintiff has failed to exhaust his claims that Heidorn, Zwiers and Pollard are denying him treatment for this injury.

In inmate complaint no. GBCI-2008-27844, plaintiff alleged that prison staff denied him a mattress, adequate clothing, bedding and shoes on October 10, 2008. Defendants argue that plaintiff failed to exhaust his administrative remedies on this claim because the complaint was rejected by the inmate complaint examiner as untimely. Plaintiff filed the grievance on October 27, 2008, beyond the 14-day limit to file a grievance. Also, he failed to file an appeal of the rejection. Therefore, I conclude that plaintiff has failed to exhaust the claims that defendants Swiekatowski and Ericksen took away his clothing, mattress and shoes and that Pollard allowed them to do so.

Because plaintiff has failed to exhaust the administrative remedies for his claims that (1) defendants Heidorn, Zwiers and Pollard are denying him treatment for his groin injury

and (2) defendants Swiekatowski and Ericksen took away his clothing, mattress and shoes and defendant Pollard let them do so, I will grant defendants' motion for summary judgment on these claims and dismiss them without prejudice. Plaintiff can bring these claims in a future action should he exhaust his administrative remedies.

### C. Motions for Preliminary Injunction

The only claim remaining in this case is that defendants Heidorn, Zwiers and Pollard are denying him treatment for his back ailments, so this is the only claim that I may consider with regard to plaintiff's motion for preliminary injunctive relief. Plaintiff failed in his first two attempts at submitting materials in support of this motion because his submissions did not comply with the court's procedures. In a February 24, 2010 order, I gave plaintiff a final chance to submit supporting materials that comply with the court's procedures. Plaintiff has filed new supporting materials as well as a motion asking the court to order the attorney general to transport him to a hospital, which I will construe as another motion for preliminary injunctive relief.

"The granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." Roland Machinery Co. v. Dresser Industries, 749 F.2d 380, 389 (7th Cir. 1984). The standard applied to determine whether a plaintiff is entitled to preliminary injunctive relief is well established:

> A district court must consider four factors in deciding whether a preliminary injunction should be granted. These factors are: 1) whether the plaintiff has a reasonable likelihood of success on the merits; 2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction

9

does not issue; 3) whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant; and 4) whether the granting of a preliminary injunction will disserve the public interest.

Pelfresne v. Village of Williams Bay, 865 F.2d 877, 883 (7th Cir. 1989). At the threshold, plaintiff must show some likelihood of success on the merits and the probability that irreparable harm will result if the requested relief is denied. If plaintiff makes both showings, the court then moves on to balance the relative harms and public interest, considering all four factors under a "sliding scale" approach. In re Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997). Thus, to obtain a preliminary injunction, a movant must first prove that his claim has "at least some merit." Digrugilliers v. Consolidated City of Indianapolis, 506 F.3d 612, 618 (7th Cir. 2007) (citing Cavel International, Inc. v. Madigan, 500 F.3d 544, 547 (7th Cir. 2007)).

Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). A medical need may be serious if it "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), if it causes pain, Cooper v. Casey, 97 F.3d 914, 916-17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825 (1994).

"Deliberate indifference" means that prison officials know of and disregard an

10

excessive risk to inmate health and safety. Farmer, 511 U.S. at 837. Inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes v. DeTella, 95 F.3d 586, 590-91 (7th Cir. 1996). Thus, disagreement with a doctor's medical judgment, incorrect diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim. Gutierrez v. Peters, 111 F.3d 1364, 1374 (7th Cir. 1997); Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996). Instead, "deliberate indifference may be inferred [from] a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole, 94 F.3d at 261-62.

1. First preliminary injunction motion

I note first that defendants have filed a motion to strike plaintiff's materials in support of his first preliminary injunction motion, arguing that he failed again to follow the court's procedures for filing materials in support of such motions. Such a motion is understandable. Plaintiff's filings continue to be unfocused and difficult to understand. There is no doubt that plaintiff has not technically complied with the court's procedures, because he has not filed a separate document titled "proposed findings of fact" that cites to supporting evidence. Instead, plaintiff has filed one document that seems to combine his

11

brief, proposed findings of fact and affidavit. However, plaintiff swears under penalty of perjury that the facts asserted in the document are true, so at the very least, the document suffices as a combined affidavit and proposed findings of fact for plaintiff's first-hand observations. Therefore, I will deny defendants' motion to strike, but I will disregard any statements in plaintiff's submission that are outside his personal knowledge.

However, even after making allowances for plaintiff's unfocused submissions, I must deny his motion for two reasons. First, even assuming that plaintiff's back injuries constitute a serious medical need, he provides very little detail regarding the history of his back pain and defendants' responses. In particular, he provides very little information regarding the roles of defendants Heidorn, Zwiers and Pollard's in denying him medical treatment. Instead, he makes conclusory statements that defendants were aware of his back problems and ignored them.

Even if I assume that defendants have been involved in plaintiff's medical treatment over the past few years, plaintiff has a bigger problem because the facts he proposes do not show that he has a likelihood of succeeding on his Eighth Amendment claims. The contours of his claim appear to be undisputed. Medical and inmate complaint records show that over the past few years, plaintiff has made numerous medical requests regarding back pain. Plaintiff has been seen by medical staff and been given ibuprofen and ice packs. The real dispute here is that plaintiff believes that he should be receiving more expansive treatment. At this point, plaintiff's allegations show that he disagrees with defendants' treatment decisions; they do not show that defendants have disregarded his medical needs. Nothing

12

in the record, such as expert testimony, indicates that defendants' treatment decisions constituted "a substantial departure from accepted professional judgment." Therefore, I conclude that plaintiff has failed to show some likelihood of success on the merits of his claims, and I will deny his first motion for preliminary injunctive relief.

2. Motion to be transported to hospital

Plaintiff has filed a motion asking the court to order the attorney general to transport him to a hospital, which I will construe as another motion for preliminary injunctive relief. (In addition, plaintiff has filed a motion asking that the court rule on this and his other motions, but that motion will be denied as unnecessary.) Although plaintiff provides more specifics along with this second motion for preliminary injunctive relief, it will also be denied.

This motion concerns a February 19, 2010 appointment with defendant Heidorn, who reviewed plaintiff's medical records and then examined him. Heidorn noted nothing to support plaintiff's complaints of "swelling in his whole body or abdominal tenderness" but did find "questionable low back pain," so he ordered X-rays and blood tests and stated that he would follow up with plaintiff in two to three weeks. Plaintiff underwent the tests on February 25, 2010. The X-ray results indicated that "there is a minimal amount of air in the small bowel" (called a "small bowel ileus") but there were no problems noted with his spine. Also, plaintiff has highlighted the results of his blood tests to show that several of them vary from what appears to be the normal range listed in the results. Plaintiff filed this motion on

March 4, 2010, asserting that his tests show that he has "high infections" and a "minimal small bowel ileus."

This motion must be denied for two reasons. First, as stated above, plaintiff has exhausted only his claims regarding his back injuries, and he fails to explain how an infection or small bowel ileus relates to his back injuries. (I note that tests on his spine showed no injuries.). Second, plaintiff provides no evidence suggesting that defendant Heidorn is disregarding these problems. It was Dr. Heidorn who treated plaintiff by examining him and referring him for further tests. Heidorn averred in his February 23, 2010 affidavit that he would follow up with plaintiff after his X-rays and blood tests. Plaintiff filed his motion on March 4, 2010, but he does not include any information regarding Heidorn's response to these results. The record is completely silent as to whether or how Heidorn followed up, although it is plaintiff's burden to provide this information. Therefore, I will deny plaintiff's second motion for preliminary injunctive relief. Plaintiff is free to refile his motion in the future, but he will have to show what defendants have done in response to his X-ray and blood test results as well as show how defendants' choice of treatment constituted "a substantial departure from accepted professional judgment," as discussed above.

### D. Motion to Revoke *In Forma Pauperis* Status

Along with their motion to strike plaintiff's materials in support of his motions for preliminary injunctive relief, defendants request that plaintiff's in forma pauperis status be revoked, arguing that plaintiff was recently examined (the February 19, 2010 appointment

with defendant Heidorn) and none of his claims of imminent danger were substantiated, thus eliminating the foundation for his in forma pauperis status. Defendants misapprehend the way imminent danger cases proceed in this court.

I take defendants to be arguing first that plaintiff's in forma pauperis status should be revoked because he has utterly failed to show that he was ever in imminent danger. I stated the following in the court's January 26, 2010 order:

> Also, I warn plaintiff about the ramifications facing litigants who abuse the imminent danger exception to their three-strike status. The only reason that plaintiff has been allowed to proceed in forma pauperis in this case is that his allegations suggest that he was under imminent danger of serious physical injury at the time that he filed his complaint. The "imminent danger" exception under 28 U.S.C. § 1915(g) is available "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate." Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002). In certain cases it may become clear from the preliminary injunction proceedings that a plaintiff who has already received three strikes under § 1915(g) for bringing frivolous claims has exaggerated or even fabricated the existence of a genuine emergency in order to circumvent the three-strikes bar. In such a case, this court may revoke its grant of leave to proceed in forma pauperis once it is clear that plaintiff was never in imminent danger of serious physical harm. Plaintiff would then be forced to pay the full $350 filing fee or have his case dismissed.

Thus the question is whether it is clear from the preliminary injunction proceedings that plaintiff "has exaggerated or even fabricated the existence of a genuine emergency in order to circumvent the three-strikes bar." I conclude that it is not. There is no question that plaintiff has struggled to submit understandable materials in support of his preliminary injunction motions, and that what he has submitted is vague and conclusory. However, plaintiff's failure to succeed in the preliminary injunction proceedings does not automatically make it clear that he has exaggerated or fabricated his allegations of imminent danger. I note further that the record remains quite murky in part because defendants decided not to

15

submit detailed proposed findings of fact and supporting evidentiary materials, which could have made plaintiff's treatment history much more clear. As it stands, there is some question whether plaintiff could produce evidence showing that defendants' treatment decisions deviated substantially from accepted professional judgment.

Second, defendants seem to be arguing that plaintiff's latest treatment shows that he is not in imminent danger. Even assuming this to be the case (although I note that the record is silent as to how defendants have responded to plaintiff's February 25, 2010 test results) plaintiff could still pursue his claim for money damages. His in forma pauperis status would not be revoked even upon removal from the alleged imminent danger. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) (case not mooted under 28 U.S.C. § 1915(g) when plaintiff transferred to new prison; § 1915(g) "only limits when frequent filers can proceed IFP, and says nothing about limiting the substance of their claims.") Because my November 5, 2009 determination that plaintiff faced imminent danger predated the February 2010 medical care, that care cannot be used to revoke plaintiff's in forma pauperis status. Therefore, I will deny defendants' motion to revoke plaintiff's in forma pauperis status.

E. Motion for Appointment of Counsel

Plaintiff has filed a third motion for appointment of counsel. I denied his first two motions for appointment of counsel in part because he failed to show that he made reasonable efforts to find a lawyer on his own. Jackson v. County of McLean, 953 F.2d

16

1070, 1073 (7th Cir. 1992). Now he has shown that he has tried to contact at least two lawyers and has been turned down, which indicates that he has made a reasonable effort.

Next, I must consider both the complexity of the case and plaintiff's ability to litigate it himself. Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007). Although the Court of Appeals for the Seventh Circuit has indicated that deliberate indifference cases tend to present complexity beyond the skills of pro se plaintiffs, Santiago v. Walls, 599 F.3d 749, 762 (7th Cir. 2010), I conclude that plaintiff has failed to show that appointment of counsel is appropriate in this case. The hallmark of plaintiff's efforts thus far is his failure to present specific evidence indicating the extent of defendants' treatment efforts (or lack thereof). This is a relatively simple task for which plaintiff did not require counsel's assistance. For instance, unlike the plaintiff in Santiago, plaintiff Almond has not been transferred from the prison where the alleged deliberate indifference took place, so it should be easy for him to obtain his treatment records. With so little "meat on the bones" of plaintiff's case at present, it is not clear that this case is too complex for plaintiff to prosecute. At the summary judgment stage, the more developed record may point to counsel being necessary. Plaintiff is free to renew his motion at that time, but his current motion will be denied.

### F. Motion to Stop Interference with Mailings

Finally, plaintiff has filed a motion that he titles as one to have prison officials release his "legal work." First he argues that some of his outgoing submissions to the court were delayed or stopped. (It is unclear whether this argument relates to his previously rejected

17

claim that he was not allowed to send evidentiary materials by certified mail.) The only situation in which I may take up the matter of court access where it is not an underlying claim is if plaintiff could show that prison officials were actively and physically blocking his ability to come to trial or defend against a motion filed by the defendants. Given the hundreds of pages of documents plaintiff has filed both before and after this motion, it does not appear that this is the case.

Second, plaintiff states that prison officials are not honoring their extension of plaintiff's legal loan. Again, it seems unlikely that this is currently a problem for plaintiff given his subsequent voluminous filings. In any case, this matter is not one for this court as "there is no constitutional entitlement to subsidy" for legal materials. Lewis v. Sullivan, 279 F.3d 526, 528 (7th Cir. 2002). Therefore I will deny this motion.

ORDER

IT IS ORDERED that

1. Defendants' motion to transfer the case to the Eastern District of Wisconsin, dkt. #58, is DENIED.

2. Defendants' motion for summary judgment for plaintiff's failure to exhaust available administrative remedies, dkt. #57, is GRANTED IN PART. The motion is granted on plaintiff's claims that (1) defendants Heidorn, Zwiers and Pollard are denying him treatment for his groin injury and (2) defendants Swiekatowski and Ericksen took away his clothing, mattress and shoes, and defendant Pollard allowed them to do so. The motion is

denied on plaintiff's claims that defendants Heidorn, Zwiers and Pollard are denying him treatment for his back injuries.

3. Defendants' motion to strike plaintiff's materials in support of his first preliminary injunction motion, dkt. #47, is DENIED.

4. Plaintiff's motions for preliminary injunctive relief, dkt. ##23, 46, are DENIED.

5. Plaintiff's motion asking the court to rule on his various motions, dkt. #52, is DENIED as unnecessary.

6. Defendants' motion to revoke plaintiff's in forma pauperis status, dkt. #47, is DENIED.

7. Plaintiff's motion for appointment of counsel, dkt. #40, is DENIED.

8. Plaintiff's motion for release of his legal work, dkt. #54, is DENIED.

Entered this _17th_ day of May, 2010.

BY THE COURT:

BARBARA B. CRABB
District Judge